UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD HOWARD,

     Plaintiff,

vs.                                                                          Case No. 13-14586

UNITED STATES OF AMERICA,                              HON. AVERN COHN

     Defendant.

_____/

**<u>MEMORANDUM AND ORDER GRANTING</u>**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 12)</u>**

## I. INTRODUCTION

This is a third-party negligence action under the Federal Tort Claims Act arising out of an accident between a vehicle driven by a U.S. Postal Service employee and a Detroit Department of Transportation bus on which Reginald Howard (Plaintiff) was a passenger. Plaintiff sued the United States of America (Defendant) under the Federal Tort Claims Act for damages, including lost wages and pain and suffering.

Now before the Court is Defendant's Motion for Summary Judgment. (Doc. 12) For the following reasons, Defendant's Motion is GRANTED.

## II. BACKGROUND

There is no dispute over the following facts.[1]  Plaintiff is a 44-year-old resident of

---

[1] Although Plaintiff disputes a number of facts described in the Joint Statement of Facts (Doc. 17), many of Plaintiff's denials are nonresponsive, provide no reference to the affidavits or other supporting materials, or are directly contradicted by documents in

Detroit.  On February 7, 2011, while Plaintiff was a passenger on a Detroit Department of Transportation bus, the bus collided with a U.S. Postal Service vehicle.

At the time, Plaintiff had been working as a home health aide with Huntington Manor, a six-bed adult foster care home providing around-the-clock supervision to adults with mental illness or disability.  As a home health aide, Plaintiff assisted up to six individuals with activities of daily living, including preparing meals, cleaning, laundry bathing, dressing, yard work, and shopping.  Frequently, this work required plaintiff to be physical with the adult patients, who would occasionally fight back or try to escape.  When Plaintiff began working as a home health aide on January 10, 2011 Plaintiff reported that he could work all three shifts, seven days a week, and began working about 30 hours per week.

How the accident at issue occurred is largely irrelevant to whether Plaintiff has any recoverable damages, nonetheless, a short factual summary is set forth.  At the time, Plaintiff was standing on the bus without holding onto anything for support.  As a result of the collision, Plaintiff fell onto the floor and another passenger fell on top of him.  Afterward, Plaintiff stood up by himself and exited the bus without assistance.  He reported feeling pain in his neck, back, and knees, and was taken by ambulance to the Henry Ford Hospital emergency room to be examined.  A CT scan of Plaintiff's neck showed no acute fracture or gross misalignment.  He was prescribed pain medication and discharged the same day.

Three days after the accident, Plaintiff was referred to a doctor, who diagnosed Plaintiff with a sprained left knee, sprained left shoulder, and a low back strain, concluding that Plaintiff was disabled from working.  The doctor continued Plaintiff's pain medication

---

the record.  To the extent that the Joint Statement reveals disputed facts, these are discussed in Part III, *infra*.

and prescribed physical therapy, an MRI of his shoulder and knee, and a knee brace.

Plaintiff continued working as a home health aide as he had before the accident, often working more hours and occasionally working additional overtime. On April 14, 2011, Plaintiff underwent a routine physical examination to determine whether he was physically able to perform the responsibilities of a home health aide. The report found "no physical/mental condition or health problem . . . that would limit [Plaintiff's] ability to work with or around children/dependent adults." Plaintiff continued to work his regular schedule in April, May, June, and July of 2011, occasionally attending physical therapy sessions from March through July. The owner of Huntington Manor testified that Plaintiff never required assistance to complete his responsibilities, nor did he request that he be placed on "light duty" due to any limitations; instead, Plaintiff reportedly complained that he was not given more hours. (Doc. 12, Ex. 4 at ¶ 7; Ex. 3 at ¶ 7)

On July 30, 2011, while working in the kitchen at Huntington Manor, Plaintiff slipped on a water puddle on the floor and fell. Plaintiff reported hitting his head, buttock, elbow and back. Plaintiff sought medical treatment at a hospital emergency room, where he reported an "intense pain in his left elbow and shoulder," as well as "a headache in the area where he struck his head." Plaintiff was discharged from the hospital and returned home. Because Plaintiff had been injured while on the job, Huntington Manor directed Plaintiff to Concentra Medical Centers for further treatment and evaluation, where he was diagnosed with an elbow contusion, a face/scalp contusion, and a lumbar strain. He was prescribed pain medication and physical therapy, and was restricted from working. Several days later, Plaintiff was placed on "limited duty" or "light duty" work.

During August and September 2011, Plaintiff received medical treatment and

3

physical therapy at Concentra and other locations where he was referred, while continuing to work with limited duties. In August 2011, Concentra concluded that Plaintiff "does not seem motivated at all to get better and seems to have secondary gain issues." In September, Huntington Manor terminated Plaintiff's employment, noting his continued failure to follow Huntington Manor policies. Thereafter, Plaintiff sought unemployment benefits, and on November 4, 2013, Plaintiff filed this Complaint. (Doc. 1)

### III. ANALYSIS

#### A.

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. *See Moore v. Philip Morris Co.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also Anderson*, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing

4

mere conclusions have no probative value" in summary judgment proceedings. *Bsharah v. Eltra Corp.*, 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 251-52).   The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).   Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).

## B.

Because a Federal Tort Claims Act claim is assessed under the substantive law of the state where the accident occurred, the Michigan No-Fault Act, MCL § 500.3135 et seq., applies.   Plaintiff seeks two kinds of damages under the No-Fault Act: (1) economic damages for lost wages from February 7, 2014, through July 3, 2014[2], and (2) noneconomic damages for pain and suffering as a result of the accident, which Plaintiff claims caused both permanent and temporary impairment of bodily functions.

---

[2] In Plaintiff's Second Supplemental Answer Defendant's First Set of Interrogatories (Doc 12, Ex. 3), Plaintiff requests "future lost wages from February 7, 2014, through July 3, 2014."  It is not clear whether Plaintiff intended to claim lost wages staring on February 7, 2011, the date of the accident.  Plaintiff offers no clarification on this point.

Defendant argues (1) that Plaintiff has no lost wages that were caused by the accident, and (2) Plaintiff has no noneconomic damages that were caused by the accident. Each argument is addressed in turn.

## 1.

Michigan's No-Fault Act allows a plaintiff to seek economic damages for "allowable expenses, work loss, and survivor's loss" that are "in excess of the daily, monthly, and 3-year limitations" recoverable from the plaintiff's own insurer though a Personal Injury Protection (PIP) first-party claim. MCL § 500.3135(3)(c). "Work loss" compensates claimants for a "loss of income from work" that an injured person would have performed "if he or she had not been injured" by the accident, and is subject to a monthly cap on the amount recoverable and a three-year cap on the duration of the benefit. MCL § 500.3107(1)(b).

In support of its argument that Plaintiff suffered no economic damages, Defendant notes that Plaintiff continued to work at Huntington Manor as he had before the accident, even increasing his hours and occasionally working overtime. Defendant further says that before Plaintiff's slip-and-fall on July 30, 2011, Plaintiff never once requested assistance in completing his duties, nor was placed on light duty. Defendant further argues that the slip-and-fall was not a reasonably foreseeable consequence of the accident. With respect to the question of economic damages, Plaintiff offers no explanation or argument in response to Defendant's argument. (See Doc. 13)

Defendant's position is persuasive. Plaintiff can show no loss in wages as a result of the accident; to the contrary, the evidence indicates that Plaintiff's hours *increased* during the months after the accident. Plaintiff did not suffer any work loss or any

6

discernible change in work duties until after the slip-and-fall on July 30, 2011—which was causally independent of the accident.  There is no genuine issue of material fact that Plaintiff has no recoverable damages as a result of the accident.

### 2.

Under MCL § 500.3135(1), a plaintiff in a third-party negligence action may seek noneconomic damages for pain and suffering if he can meet a statutory threshold by showing "death," "permanent serious disfigurement," or "serious impairment of a body function."  If there is no factual dispute regarding the nature and extent of a plaintiff's injuries, or if the dispute is immaterial to whether or not a plaintiff suffered a serious impairment of an important body function, the trial court must decide the issue as a matter of law.  MCL 500.3135(2).  If there is a material factual dispute regarding the nature and extent of a plaintiff's injuries, the issue is left to a jury.  *McCormick v. Carrier*, 487 Mich 180; 795 NW2d 517 (2010).  To demonstrate a "serious impairment of an important body function," a plaintiff must establish (1) an objectively manifested impairment of (2) an important body function that (3) affects his or her general ability to lead his or her normal life.  *Id.* at 194-95; MCL § 500.3135(7).

Defendant argues that Plaintiff cannot demonstrate a "serious impairment of a body function" that would permit noneconomic damages under the No-Fault Act, and further argues that any impairment was not caused by the accident, but by Plaintiff's slip-and-fall. In support, Defendant first notes that after the accident, Plaintiff experienced no limitation in his work duties, and instead increased his hours and took occasional overtime. In addition, Plaintiff's April 2011 physical examination revealed no physical or mental conditions that would limit Plaintiff's ability to work, and it was not until August 2011—after

7

the slip-and-fall—that Plaintiff was placed on "limited duty" work.  Therefore, Defendant argues, Plaintiff can not show any impairment that "affects the person's general ability to lead his normal life"—the third prong under the *McCormick* test.  As noted by Defendant, the Michigan Court of Appeals has applied the *McCormick* standard in several cases such as this one, affirming grants of summary judgment where a plaintiff's pre-accident and post-accident activities are not materially altered.  *See, e.g., Trimble v. Shepardson*, 2014 WL 575761, at *2 (Mich. Ct. App. Feb. 11, 2014) (affirming summary judgment to defendant where plaintiffs could not show that their ability to lead their normal lives had been affected); *Khami v. Gjonlleshaj*, 2012 WL 5060616, at *1-2 (Mich. Ct. App. Oct. 18, 2012) (affirming summary judgment where "no evidence was presented to demonstrate that plaintiff's ability to lead her normal life was significantly altered").

In response, Plaintiff says that he did experience objectively manifested injuries, including neck, back, and shoulder pain, disc herniations, and some shoulder injuries and limitations.  These injuries, Plaintiff says, limited his ability to lead a normal life, caused him to require home assistance from his sister for a year and a half, and, at least in part, contributed to him losing his job.  In addition, Plaintiff says that for some time after the accident, Huntington Manor assigned him to only "monitoring" of a single patient and to dispensing medication for others.

Plaintiff's response lacks merit.  As noted by Defendant, Plaintiff's employment records reveal that he experienced no significant impairment after the accident, and that it was not until after the slip-and-fall that Plaintiff had any significant limitations in his work duties.  Plaintiff's assertion that he was assigned to monitoring and dispensing medication after the accident is directly contradicted by his employment records and the testimony of

8

his supervisors, which reveal that Plaintiff continued to work "as he had before the accident." (Doc. 17 at ¶ 21)  Any claim that his injuries did cause some significant impairment of his general ability to lead a normal life is completely contradicted by his employment history.

To the extent Plaintiff relies on his sister's household assistance, Defendant points out that Plaintiff's "Household Services Statement" was not produced in discovery and should be barred.  (Doc. 13 Ex. 14)  However, even if these statements were to be considered, they consist merely records of the work that Plaintiff's sister performed at his home, and provide no indication that Plaintiff was somehow limited from performing these activities himself.  In addition, any such argument is contradicted by Plaintiff's employment records.  Similarly, to the extent Plaintiff argues that the injuries from the accident contributed to him losing his job, Defendant points out that Plaintiff's supporting document—an unemployment insurance determination from December 2011 (Doc. 13, Ex. 15)—was also not produced in discovery and should be barred.  However, even if the documents were to be considered, the "injuries" that the determination refers to are not those related to the accident, but to the later slip-and-fall.

## IV. CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment has been granted.  This case is DISMISSED.

SO ORDERED.

 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2014

9

13-14586 Howard v. United States of America

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 31, 2014, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160